# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1543 | **DATE** | 6/19/2000 |
| **CASE TITLE** | GLORIA JEAN McCASKILL vs. SCI MANAGEMENT CORP., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The motion to compel arbitration [7-1] is granted. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 2 2 2000 | 14 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | S.B. | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 6/19/2000 | |
| | | | date mailed notice | |
| jad | courtroom deputy's initials | | jad | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GLORIA JEAN McCASKILL, )
)
Plaintiff, ) No. 00 C 1543
)
v. ) Suzanne B. Conlon, Judge
)
SCI MANAGEMENT CORP., SCI ILLINOIS )
SERVICES, INC., d/b/a EVERGREEN )
CEMETERY, SAM SMITH and PATRICK J. )
COMER, )
)
Defendants. )

DOCKETED
JUN 22 2000

## MEMORANDUM OPINION AND ORDER

Gloria Jean McCaskill sues SCI Management Corporation, SCI Illinois Services, Inc., d/b/a Evergreen Cemetery ("SCI"), Sam Smith and Patrick Comer (collectively "defendants") for retaliation and racial discrimination. McCaskill alleges SCI demoted and eventually terminated her in retaliation for reporting allegations of sexual harassment and due to her race, in violation of Title VII, 42 U.S.C. §2000e et seq. (Counts I-III), and denied her contract rights, in violation of 42 U.S.C. §1981 (Count IV). She claims defendants refused to pay her for wages earned, in violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, et seq. (Count V). McCaskill further alleges tortious interference of contract, in violation of Illinois law against Smith and Comer (Count VI). SCI and Comer move to dismiss the complaint and compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § et seq. ("the FAA") and the Illinois Uniform Arbitration Act, 710 ILCS 5/2 ("the IUAA").

# BACKGROUND

Courts treat motions to compel arbitration as assertions that they are deprived of subject matter jurisdiction during the course of arbitration. Robert Half International, Inc. v. Thompson, 1999 WL 138849 *1 (N.D. Ill. March 5, 1999) (citing Evans v. Hudson Coal Co., 165 F.2d 970, 972 (3rd Cir. 1948)). Accordingly, the background facts are taken from the parties' pleadings, including attached exhibits and affidavits.[1] Robert Half, WL 138849 *1 (citing Capitol Leasing Co. v. Federal Deposit Insurance Corp., 999 F.2d 188, 191 (7th Cir. 1993) (court may look beyond allegations to submitted evidence when deciding if jurisdiction exists)). The court accepts uncontested facts as true. Saylor v. Dyniewski, 836 F.2d 342, 342 (7th Cir. 1988). Where the facts are in dispute, the court accepts McCaskill's version. Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987).

McCaskill, who is African-American, worked at Evergreen Cemetery ("Evergreen") from 1996 until she was terminated in September 1999. McCaskill began as a "pre-need" sales counselor. She was effective. Evergreen eventually promoted her to pre-need unit manager. As unit manager, McCaskill received additional compensation, called "override," which was a percentage of certain sales made by others in her unit. In July 1999, a female salesperson in the pre-need unit complained to McCaskill about sexual harassment by Sam Smith. Smith was sales manager and McCaskill's immediate supervisor. McCaskill attempted to report the allegations to Patrick Comer, Evergreen's general manager, but he was unavailable. McCaskill then spoke directly to Smith. He denied the allegations. In the same conversation, Smith falsely informed McCaskill that the employee who

---

[1] Defendants include a Local Rule 56.1 statement of facts with their motion. However, because material outside the pleadings may be considered in ruling on a motion to compel arbitration, the court does not convert the motion into a motion for summary judgment. Defendants' statement of facts is unnecessary and is not considered.

2

complained had not met her minimum sales quota and as a result McCaskill would not receive any override compensation. On August 12, 1999, another female salesperson in McCaskill's unit claimed she was sexually harassed by Smith. McCaskill again confronted Smith. He again denied the allegations. Later that day, Smith informed McCaskill she was no longer the unit manager. McCaskill's replacement was a white woman with less experience. During this time, Comer refused to meet with McCaskill. On August 13, 1999, McCaskill wrote a letter to Comer stating that after she reported the sexual harassment allegations, she was subject to Smith's unwarranted criticism and that she was improperly denied override compensation. McCaskill then took a previously planned vacation. Upon McCaskill's return to work on September 1, 1999, she was terminated. McCaskill claims her demotion and termination were in retaliation for reporting allegations of sexual harassment and due to her race. She also claims SCI owes her incentive pay and overrides.

On May 16, 1997, McCaskill entered into an agreement with SCI entitled "Principles of Employment" ("the agreement"). This agreement contains a mandatory arbitration provision for handling all employment disputes. The agreement provides:

> 1. <u>Matters Subject to Arbitration</u>
> Employee and the Company agree that, except for the matters identified in Section 2 below, all disputes relating to any aspect of Employee's employment with the Company shall be resolved by binding arbitration. This includes, but is not limited to, any claims against the Company, its affiliates or their respective officers, directors, employees, or agents for breach of contract, wrongful discharge, discrimination, harassment, defamation, misrepresentation, and emotional distress, as well as any disputes pertaining to the meaning or effect of this Agreement. The arbitration shall be conducted in accordance with the procedures attached hereto as Exhibit "A." This agreement to arbitrate shall cover disputes arising both before and after the execution of this document, except to the extent that any litigation has already been filed as of the date hereof.

> 2. Exclusions
>
> It is expressly agreed and understood that this Agreement shall not govern claims for workers' compensation or unemployment benefits, claims brought to enforce any noncompetition or confidentiality agreement which may exist between the parties, or any claim by the Company against Employee which is based upon fraud, theft or other dishonest conduct of employee.
>
> 4. Legal Counsel/Costs
>
> Each party may retain legal counsel and shall pay its own costs and attorneys' fees, regardless of the outcome of the arbitration. Each party shall pay one-half of the compensation to be paid to the arbitrator(s), as well as one-half of any other costs relating to the administration of the arbitration proceeding (e.g., room rental, court reporter, etc.).

Comer aff. Ex. 1. Exhibit A to the agreement sets out arbitration procedures. Paragraph four of the arbitration procedures provide that proceedings shall be conducted in accordance with the statutes, rules or regulations of the state where the employee was employed. In the absence of guidance, arbitration shall be conducted in accordance with the rules of the American Arbitration Association ("AAA"). Paragraph four further states "[i]n the event of any inconsistency between this Agreement and the statutes, rules or regulations to be applied pursuant to this paragraph, the terms of this Agreement shall apply." Id. McCaskill signed the agreement, as did Comer on behalf of SCI. Defendants seek an order compelling McCaskill to submit her claims to arbitration pursuant to the agreement.

## DISCUSSION

### I   The federal arbitration act standards

The FAA governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts.[2] Jain v. Mere, 51 F.3d 686, 688 (7th Cir. 1995).

---

[2]McCaskill does not dispute that the FAA applies.

4

The central purpose of the FAA is to "ensure that private agreements to arbitrate are enforced according to their terms." Mastrobouno v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 53-54 (1995) (citations omitted). Under the FAA, arbitration is favored "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." S+L+HS. p.A. v. Miller-St. Nazianz, Inc., 988 F.2d 1518, 1524 (7th Cir. 1993). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Mastrobouno, 514 U.S. at 62 n. 8 (quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24-25 (1983)). To further this policy, §3 of the FAA requires the court to grant a request for a stay when there is a valid arbitration clause and to direct the parties to proceed to arbitration. 9 U.S.C. §3; First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995).

In order to determine whether a claim is arbitrable, the court must determine (1) whether there is a valid and enforceable agreement to arbitrate, (2) whether the claims fall within the scope of the agreement, and (3) whether there has been a waiver. Bauer v. Morton's of Chicago, 2000 WL 149287 *2 (N.D. Ill. Feb. 9, 2000) (citing Gilmer, 500 U.S. at 24-34). An agreement that requires arbitration of statutory claims is generally enforceable under the FAA. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991). This includes claims of retaliation and discrimination brought pursuant to Title VII and §1981. *See* Koveleskie, v. SBC Capital Markets, Inc., 167 F.3d 361, 362 (7th Cir. 1999) (Title VII); Shaw v. DLJ Pershing, 78 F.Supp.2d 781 (N.D. Ill. 1999) (§1981). Arbitration of statutory rights is proper because by agreeing to arbitrate a statutory claim "a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than

5

a judicial, forum." Gilmer, 500 U.S. at 26 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)). "So long as the prospective litigant effectively may vindicate his or her statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." Id. Thus, an agreement to arbitrate a statutory claim is enforceable so long as a party may effectively vindicate her statutory rights in the arbitration. A plaintiff bears the burden of establishing why an arbitration clause should not be enforced. *See* Shearson/Am. Express v. McMahon, 482 U.S. 220, 225-26 (1987).

## II McCaskill's arbitration agreement

McCaskill does not contend that her claims do not fall within the scope of the agreement or that defendants have waived their right to arbitration. The issue is whether the agreement signed by McCaskill and SCI is valid and enforceable. McCaskill contends the terms of the arbitration agreement prevent her from fully and effectively vindicating her Title VII rights. She makes two related arguments in support of this contention. First, McCaskill claims arbitration costs are prohibitive and result in the effective denial of a forum to vindicate her Title VII rights. Second, she claims the arbitration agreement does not provide adequate relief should she prevail on her Title VII claims.

### A   The costs of arbitration

The agreement requires McCaskill to pay for half the fees of the arbitrator and other costs relating to the arbitration hearing. She claims arbitration costs are prohibitive and result in the effective denial of a forum to vindicate her Title VII rights. McCaskill argues she is denied a judicial forum by the agreement and the contractual forum by her inability to pay arbitration expenses. She concludes this result clearly undermines the remedial and deterrent functions of the federal anti-

discrimination laws and therefore the arbitration agreement is unenforceable. McCaskill relies on Cole v. Burns Int'l Sec. Serv., 105 F.3d 1465, 1484 (D.C. Cir. 1997) and Shankle v. B-G Maintenance Management of Colorado, Inc., 163 F.3d 1230, 1234 (10th Cir. 1999) in support of her claim that arbitration costs deny her an effective forum to vindicate her Title VII rights. In Cole and Shankle, the issue was whether plaintiff could be required to pay all or part of arbitration costs pursuant to a mandatory pre-dispute arbitration agreement. In Cole, the D.C. Circuit enforced the arbitration agreement but construed its terms to require the employer to pay all arbitrator's fees. Cole, 105 F.3d at 1483. A plaintiff "could not be required to agree to arbitrate his public law claims as a condition of employment if the arbitration agreement required him to pay all or part of the arbitrator's fees and expenses." Id. at 1485. Similarly, in Shankle the Tenth Circuit held an arbitration agreement that required plaintiff to pay half the arbitrator's fees was unenforceable. Shankle, 163 F.3d at 1234. The employer "required [plaintiff] to agree to mandatory arbitration as a term of continued employment, yet failed to provide an accessible forum in which he could resolve his statutory rights." Id. That result "clearly undermines the remedial and deterrent function of the federal anti-discrimination laws" and "[g]iven this deficiency . . . the Agreement is unenforceable under the Federal Arbitration Act." Id. McCaskill argues her situation is similar to Cole and Shankle. These decisions do not warrant denial of arbitration. It is uncertain McCaskill will be forced to pay prohibitively expensive costs. Unlike Cole and Shankle, there is no evidence the requirement that McCaskill pay half of the arbitration costs would be prohibitively expensive for her. There is no indication of arbitration costs or that McCaskill cannot afford the fee. A determination that the arbitration agreement is invalid is unwarranted in this situation. *See* Williams v. Cigna Financial Advisors Inc., 197 F.3d 752, 763-64 (5th Cir. 1999) (enforcing arbitration agreement absent evidence plaintiff unable to pay half the fees

7

or that costs were prohibitively expensive); *see also* Thompson v. Illinois Title Loans, Inc., 2000 WL 45493 *5 (N.D. Ill. Jan. 11, 2000) (plaintiff did not allege inability to afford arbitration costs or that the arbitration costs were prohibitive).

This conclusion is bolstered by the fact McCaskill's arbitration agreement expressly incorporates the AAA rules. These rules contain safeguards protecting plaintiffs from inordinately high arbitration costs. Specifically, the AAA rules provide that filing and administrative fees may be reduced in cases of extreme hardship and are subject to final apportionment by the arbitrator. *See* AAA National Rules for the Resolution of Employment Disputes, Rule 38, 1998 WL 1527109 (A.A.A.) (hereafter "Rule _ of the AAA"). The applicability of the AAA rules is an important factor supporting enforcement of the agreement. *See* Brown, 2000 WL 528631 at *3-4 ("the safeguards provided by the AAA rules allay our concerns regarding plaintiff's ability to pay the arbitration costs associated with pursuing her claims"); Arakawa v. Japan Network Group, 56 F.Supp.2d 349, 354-55 (S.D.N.Y. 1999) (ordering arbitration of Title VII claim where arbitration agreement incorporated AAA employment dispute resolution rules). "The arbitration rules applicable here 'provide the minimum guarantees required to ensure that [plaintiff's ability to vindicate her statutory rights will not be undone by steep filing fees, steep arbitrator's fees, or other high costs of arbitration.'" Brown, 2000 WL 528631 at *3 (quoting Randolph v. Green Tree Financial Corp., 178 F.3d 1149, 1158 (11th Cir. 1999). As the court explained in Arakawa:

> A fee splitting arrangement is only contrary to the remedial and deterrent aims of Tile VII if the fees are so great and the plaintiff's financial situation is such that the imposition of the fees would make the plaintiff unable to, or would substantially deter plaintiff from seeking to, enforce his or her statutory rights. At this point in the litigation it is not clear how large the fees of the arbitration will be or whether plaintiff will be required to pay any portion of it, and,

8

> therefore, this Court cannot conclude that the payment of fees will constitute a barrier to the vindication of [plaintiff's] statutory rights.

56 F.Supp.2d at 355. We are faced with a similar situation here. McCaskill has not shown the requirement to pay half the arbitration costs "prevented [her] from having a full opportunity to vindicate [her] claims effectively or prevented the arbitration proceedings from affording [her] an adequate substitute for a federal judicial forum." Williams, 197 F.3d at 764.

Furthermore, even if McCaskill is forced to pay half the arbitration costs, this alone does not make the agreement unenforceable. Courts have enforced mandatory arbitration agreements requiring the parties to split arbitration costs. In Koveleskie, v. SBC Capital Markets, Inc., 167 F.3d 361, 362 (7th Cir. 1999), the court held the possibility that a plaintiff may be required to pay arbitration fees does not invalidate an arbitration agreement in a Title VII case. *See also* Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 16 (1st Cir. 1999); (enforcing arbitration agreement requiring plaintiffs to pay forum fees); In re RealNetworks, Inc., Privacy Litigation, 2000 WL 631341 *7 (N.D. Ill. May 8, 2000) ("the Seventh Circuit has found that the costs of arbitration do not prevent the enforcement of a valid arbitration agreement"); Brown v. Surety Finance Service, Inc., 2000 WL 528631 *3 (N.D. Ill. March 24, 2000) (high arbitration costs do not negate an otherwise enforceable arbitration agreement); Dorsey v. H.C.P. Sales, Inc., 46 F.Supp.2d 804, 808 (N.D. Ill. 1999) (plaintiff cannot escape her contractual obligation to arbitrate disputes by complaining about cost); Arakawa, 56 F.Supp.2d at 354 (enforcing arbitration agreement requiring plaintiffs to pay half arbitration fees). In short, "the fact that a plaintiff faces the possibility of being charged arbitration fees, including sharing the arbitrator's compensation if directed to do so by the arbitrator, does not make the agreement to arbitrate Title VII claims unenforceable as a matter of law." Arakawa, 56 F.Supp.2d

at 354. The fact McCaskill's agreement states she is responsible for half the arbitration costs does not make the agreement unenforceable.

**B      Costs and attorneys' fees**

McCaskill claims the arbitration agreement is invalid because it does not provide adequate relief should she prevail. Under Title VII, a prevailing plaintiff may recover costs and reasonable attorneys' fees. The agreement obligates McCaskill to bear her own costs and attorneys' fees regardless of the outcome of arbitration. She claims the agreement plainly requires her to forfeit relief specifically provided by Title VII. Although the Seventh Circuit has not addressed this situation, other Circuits have held arbitration agreements that require forfeiture of statutory rights unenforceable. *See* Shankle, 163 F.3d at 1234; Paladino v. Avnet Computer Technologies, 134 F.3d 1054, 1060 (11th Cir. 1998) (arbitration agreement that limited Title VII plaintiff to breach of contract damages only was unenforceable); Graham Oil Co. v. ARCO Products Co., 43 F.3d 1244, 1248-49 (9th Cir. 1994) (arbitration agreement that expressly forfeited plaintiff's right to exemplary damages, attorneys' fees and one year statute of limitations under the Petroleum Marketing Practices Act, 15 U.S.C. §2805, was unenforceable). McCaskill concludes that because the arbitration agreement states that each party shall pay its own costs and attorneys' fees, the agreement requires her to forfeit a right guaranteed under Title VII and is therefore unenforceable.

Defendants claim the provision requiring the parties to pay their own attorneys' fees does not render the agreement unenforceable. They contend the agreement does not limit either side's right to obtain substantive remedies. Defendants point out that the agreement expressly incorporates AAA rules. The AAA rules give the arbitrator great leeway in determining an appropriate award. Specifically, Rule 34 provides:

10

> d. The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable, including any remedy or relief that would have been available to the parties had the manner been heard in court.
> e. The arbitrator shall have the authority to provide for the reimbursement of representative's fees, in whole or in part, as part of the remedy, in accordance with applicable law.

1998 WL 1527109 at *12. Defendants claim Rule 34 of AAA is not abrogated by the agreement and construing all ambiguities in favor of arbitration, the agreement confers upon the arbitrator the right to grant any remedy or relief available to either party had the matter been heard in court. *See* <u>Robert Half Int'l Inc. v. Thompson</u>, 1999 WL 138849 *3 (under Illinois law, arbitration contracts are construed in favor of arbitration). Defendants conclude that given the arbitrator's liberal discretion to grant an award, the fact the arbitration agreement requires the parties to pay their own attorneys' fees does not preclude their subsequent recovery. In essence, defendants claim that despite the language of the agreement requiring McCaskill to pay her costs and attorneys' fees regardless of the outcome, the arbitrator may take these payments into account and increase the award accordingly. Thus, defendants conclude costs and attorneys' fees are available to McCaskill in arbitration and the agreement does not deny her Title VII statutory rights.

Certainly an employee may not be forced to waive her statutory rights in exchange for employment. However, considering defendants' representation that McCaskill may collect costs and attorneys fees in arbitration and the strong federal policy favoring enforcement of arbitration agreements, the arbitration agreement does not constitute a barrier to the vindication of McCaskill's Title VII rights. This determination does not leave McCaskill's statutory rights vulnerable to the whim of the arbitrator without opportunity for redress. "Any arbitral award in this case remains subject to

11

subsequent judicial review in order to ensure that the arbitrator complied 'with the requirements of the statute at issue.'" Brown, 2000 WL 528631 at *4 (quoting Gilmer, 500 U.S. at 32).

## CONCLUSION

The motion to compel arbitration is granted.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

June 19, 2000